```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division

UNITED STATES OF AMERICA       )
                               )
         v.                    )
                               )       1:05cr460(JCC)
GEORGE CORNELIUS DAY, et al.,  )
                               )
         Defendants.           )
```

## M E M O R A N D U M   O P I N I O N

Defendant, Rufus Felder Cunningham, is charged with two counts in an eleven-count indictment with:  1) conspiracy to distribute cocaine/cocaine base in violation of 21 U.S.C. § 846; and 2) conspiracy to import cocaine in violation of 21 U.S.C. § 963.  Defendant has filed a Motion to suppress cocaine seized from his vehicle at the time of his arrest as well as statements he made at the time.  For the reasons set forth below, the Court will deny Defendant's Motion.

### I.  Facts

At approximately 8:45 p.m. on the evening of September 13, 2005, Defendant was driving a rented white Dodge van on Interstate 95 north through South Carolina.  Officers Chris Malphrus and Kevin Smith of the Ridgeland Police Department's Interstate Criminal Enforcement Team were on patrol with their canine at the time.  The officers were stopped in the highway's median when Officer Malphrus heard Defendant's vehicle cross the rumble strips on the right shoulder of the highway.  Officer Malphrus pulled out onto Interstate 95 and followed Defendant's

vehicle for approximately a mile and a half in Jasper County, South Carolina.[1] After noting that Defendant's vehicle had Florida license plates, Officer Malphrus witnessed the vehicle cross the rumble strips on the right side of the road for a second time. Officer Malphrus activated his emergency lights and pulled Defendant over.

      Officer Malphrus approached the passenger side and scanned Defendant's vehicle with a flashlight. He noted a gift-wrapped package on the back seat and a small black suitcase on the middle seat. He then asked Defendant for a driver's license and registration. Defendant indicated to Officer Malphrus that he was traveling to Alexandria, Virginia, where he was from, and that he had been in Fort Lauderdale, Florida for three days. According to Officer Malphrus, Defendant seemed nervous when he spoke and his voice was "very shaky." (Tr. of Feb. 1, 2006 Evidentiary Hr'g at 38.) When Defendant handed over his driver's license and his rental agreement, Officer Malphrus noticed that his hands were shaking. Officer Malphrus asked Defendant how long he had been driving, and Defendant responded that he had been on the road since 2 p.m. Officer Malphrus then asked him if he had been drinking, and Defendant responded that he had not. Using his flashlight, Officer Malphrus noticed that the van had

---

[1] At this time, Officer Malphrus activated a video camera, which recorded the events occurring from the beginning of the traffic stop until Defendant's arrest. At the hearing on Defendant's Motion to suppress, the Court viewed this recording.

"a lived-in look" with trash on the floor.  (Tr. of Feb. 1, 2006 Evidentiary Hr'g at 31.)  After their brief exchange, Defendant handed Officer Malphrus his driver's license and his rental agreement.  Officer Malphrus then asked Defendant to step out of the van and step to its rear.

When Defendant exited the vehicle, he consented to a pat-down search.  Defendant had to put on his shoes in the vehicle to come out, and he was wearing a tank-top and shorts. Officer Malphrus patted Defendant down and found a hairnet in Defendant's right front pocket.  No drugs were found on Defendant's person.

Officer Malphrus had noticed earlier that Defendant handed him a Maryland driver's license.  After conducting the pat-down search, Officer Malphrus asked Defendant about the discrepancy, in light of Defendant's earlier representation that he was from Alexandria, Virginia.  Defendant then told Officer Malphrus that he actually lived in Maryland.  Upon examination of the rental agreement, Officer Malphrus noted that the van had been rented at the Fort Lauderdale airport on September 12, 2005 at 9:56 p.m. and that the van was due in Washington, D.C. on September 13, 2005 at 4:30 p.m.  He noticed that Defendant was late in returning the vehicle.

At this point, several factors caused Officer Malphrus to suspect Defendant of criminal activity.  Defendant's travel

plans indicated to Officer Malphrus that "he was coming from a source city going to a source city." (Tr. of Feb. 1, 2006 Evidentiary Hr'g at 37.)  In his training and experience, he had learned that "drug traffickers will fly into the location where they are going to pick up the drugs or narcotics, rent a car at the airport, and then drive back." (Tr. of Feb. 1, 2006 Evidentiary Hr'g at 34-35.)  That appeared to Officer Malphrus to be the case when he saw that Defendant had rented a car from the Fort Lauderdale airport and that his rental car was overdue.  Officer Malphrus also based his suspicion on the fact that Defendant was "nervous," on "the lived-in appearance of the car," and on Defendant's "conflicting stories about his current residence.  (Tr. of Feb. 1, 2006 Evidentiary Hr'g at 38.)

    Officer Malphrus asked Officer Smith to run a driver's license check and then asked Defendant if he would agree to a canine search of his vehicle while Officer Smith was conducting the license check.  Defendant did not object.  Officer Malphrus retrieved his canine and walked the dog around Defendant's vehicle.  When the canine reached the back of the van, it alerted at the back hatch.  Officer Malphrus walked the canine back to the police cruiser and instructed Officer Smith to call other officers to assist in searching Defendant's vehicle.  He then advised Defendant that the canine had detected the odor of illegal narcotics and asked for Defendant's permission to search.

Defendant denied permission, and Officer Malphrus informed Defendant that the canine's alert had given him probable cause to search the vehicle. Officer Malphrus then began to search the van. During this time, Defendant was required to remain on the ground on the side of the highway.

Other officers responded to the scene and began to assist Officer Malphrus in the search. After several minutes, Officer Malphrus retrieved the canine from the police cruiser and placed the canine behind the van's back seat while the back hatch was raised. The canine alerted to the scent of illegal narcotics coming over the back seat. Officer Malphrus led the canine out of the back of the van and into the side door. Upon reaching the back seat, the canine alerted to the gift-wrapped package. Defendant had previously informed the officers that the package held a television set and a laptop computer, both of which were graduation gifts for his sister. Officer Malphrus opened the package and found a backpack containing a black plastic trash bag. He felt the plastic bag and noted that the object inside felt similar to a brick. Officer Malphrus opened the plastic bag and found suspected cocaine covered in a "sweet smelling" liquid.

Malphrus issued a warning citation to Defendant for failing to maintain his lane and arrested Defendant for possession of illegal drugs. At the time of the arrest, the officers seized approximately six (6) kilograms of cocaine and

sixty dollars.  Defendant has moved to suppress the cocaine and any statements that he made during the traffic stop.

## II.  Standard of Review

The moving party has the burden to prove that suppression is proper.  *United States v. Simmons*, 107 F. Supp. 2d 703, 705 (E.D. Va. 2000).  The burden on a motion to suppress is proof by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

## III.  Analysis

A.  The Six Kilograms of Cocaine

Defendant first argues that there was no objective basis for Officer Malphrus's stop of his vehicle and that the stop was motivated by racial profiling.  After having the opportunity to observe Officer Malphrus's credibility and demeanor, however, the Court will credit his testimony.  In *United States v. Hassan El*, 5 F.3d 726 (4th Cir. 1993), the Fourth Circuit adopted an objective standard with regard to claims of pretextual stops, holding that an officer's observation of a traffic offense gives the officer probable cause to stop the offending vehicle.  *Id.* at 730-31.  In this case, Officer Malphrus observed Defendant's vehicle veer outside of its lane of travel and into the emergency lane on two occasions, in violation of S.C. Code § 85-5-1900.  Defendant's contention that the stop was an act of racial profiling is sheer speculation.  Officer

Malphrus's observation of Defendant's traffic violation provided objective circumstances that were a reasonable basis for stopping Defendant's vehicle.  Accordingly, the Court will find that the stop was justified.

Defendant also challenges the reasonableness of the officers' actions following the traffic stop.  A detention following a traffic stop may not be unnecessarily intrusive and must be reasonably related in time to the investigation.  *United States v. Wellman*, 185 F.3d 651, 655 (6th Cir. 1999).  During a traffic stop, an officer may request vehicle registration and driver's license, ask about travel plans, run driver's license and vehicle registration checks, and issue a citation.  *United States v. Rusher*, 966 F.2d 868, 876 (4th Cir. 1992).  After the driver has produced a valid driver's license and proof that he is entitled to operate the vehicle, however, he may not be detained for further questioning unless the officer has reasonable suspicion of a serious crime.  *Id.* at 876-77.

In this case, Officer Malphrus began to follow Defendant's vehicle at 8:48 p.m., and he located the cocaine at approximately 9:06 p.m.  Thus, the stop lasted no longer than eighteen minutes.  Such is not an unreasonable length of time for a traffic stop.  *See Jeffus*, 22 F.3d at 557 (holding that a traffic stop of approximately fifteen minutes was reasonably related in time to the justification for the stop).  Before the

canine alerted to the presence of illegal drugs, Officer Malphrus's inquiries focused on Defendant's driver's license, rental agreement, and travel plans.[2]  Such questions involve a proper subject matter for a traffic stop.

Furthermore, after a vehicle has been lawfully detained for a traffic violation, it is reasonable under the Fourth Amendment for the officer to order the driver to exit the vehicle.  *Maryland v. Wilson*, 519 U.S. 408, 412 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977).  This is so regardless of the officer's subjective intent behind ordering the driver out of the vehicle.  *Ohio v. Robinette*, 519 U.S. 33, 38-39 (1996).  Finally, having a trained canine sniff the perimeter of a lawfully stopped vehicle in a public place does not constitute a search.  *See United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994).  Thus, Officer Malphrus's actions in asking Defendant to exit his vehicle and in circling the vehicle with a trained canine were reasonable.[3]

---

[2] As will be discussed below, Defendant's answers to these questions partially formed the basis for Officer Malphrus's reasonable suspicion of more serious criminal activity, as Defendant had been in Fort Lauderdale, a known source city for illegal drugs, and was returning to the Washington, D.C., metropolitan area.

[3] Defendant also claims that Officer Malphrus acted unreasonably in conducting a pat-down after Defendant exited the vehicle.  According to Defendant, Officer Malphrus had no reason to suspect that he was concealing a weapon, given that Defendant wore only a tank top and shorts.  *See Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979) (holding that *Terry v. Ohio*, 392 U.S. 1 (1968), does not permit a frisk for weapons on less than reasonable suspicion directed at the person to be frisked).  As no evidence was found during or derivative from the pat-down, however, the Court needs not consider whether the officer's actions were reasonable.

As stated above, the officer conducting a traffic stop may not detain a motorist for questions beyond the scope of a normal traffic stop unless he has a reasonable suspicion of a serious crime.  *See Rusher*, 966 F.2d at 876-77.  In determining whether reasonable suspicion was present, the Court will consider factual inferences drawn by law enforcement officers based on their observations and their practical experience.  *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).  In this case, at the outset of the stop, Officer Malphrus observed that the van had a "lived-in" look, containing several bags, food wrappers, empty beverage cans, and a partially eaten sandwich.  Such an observation may indicate that Defendant had been traveling without stopping to eat or change clothes.  *See United States v. Orsolini*, 300 F.3d 724, 728 (4th Cir. 2002).  Officer Malphrus also observed that Defendant's hands were shaking and that his voice was shaky.  The Seventh Circuit has held that signs of nervousness, coupled with the use of a rental car and a passenger compartment that has a lived-in look, are among the factors that can give rise to reasonable suspicion in a traffic stop.  *See United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996).

Officer Malphrus then learned that Defendant was traveling from Fort Lauderdale, Florida, a known source city for illegal drugs, to the Washington, D.C. metropolitan area, another

known source city.  While Defendant informed Officer Malphrus that he had been visiting family in Fort Lauderdale for the past three days, Officer Malphrus observed that Defendant's travel bag appeared to be too small to hold sufficient clothing and toiletries for a three-day visit.  Defendant's representation also appeared to be inconsistent with the "lived-in" look of his vehicle.  Finally, Officer Malphrus noted that Defendant picked the vehicle up at the Fort Lauderdale airport, that Defendant's rental agreement provided for a one-way rental, and that the vehicle was already overdue.  These factors, considered together, created an objectively reasonable, articulable suspicion of serious crime that was sufficient to detain Defendant for further questioning.  *See United States v. Sokolow*, 490 U.S. 1, 8-9 (1989) (detailing circumstances under which travel to and from a known source city can give rise to reasonable suspicion of drug trafficking).

    Regardless, at the moment the canine alerted to the presence of illegal drugs in the van, Officer Malphrus was given probable cause for the search that followed.  *See Jeffus*, 22 F.3d at 557.  In sum, the Court credits the testimony of Officer Malphrus and finds that his stop of Defendant's vehicle as well as his inquiries, use of the canine, and search of the vehicle were proper.  *See Hassan El*, 5 F.3d at 731.  The Court will deny Defendant's Motion to suppress the cocaine.

B.  Statements Made by Defendant During the Traffic Stop

Defendant also seeks suppression of all statements he made to the police during the traffic stop.  According to Defendant, he was not given *Miranda* warnings at the time of the stop.  Relying on *Berkemer v. McCarty*, 468 U.S. 420 (1984), he claims that his responses to Officer Malphrus's questions during the stop were inadmissible.  The Court disagrees.

In *Berkemer*, the Supreme Court stated that an individual was "in custody" for *Miranda* purposes "at least as of the moment he was formally placed under arrest and instructed to get into the police car.  468 U.S. at 434.  In this case, however, Defendant seeks suppression of statements made before he was formally placed under arrest.  The case law is clear that *Miranda* warnings are not required when a motorist is questioned during a routine traffic stop.  *See id.* at 436 ("persons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of Miranda"); *United States v. Sullivan*, 138 F.3d 126, 130-31 (4th Cir. 1998) ("In short, while a motorist during a routine traffic stop is detained and not free to leave, the motorist is not "in custody" for Miranda purposes.").  Rather, "*Miranda* warnings are required only when the motorist is detained to an extent analogous to an arrest." *Sullivan*, 138 F.3d at 131.  Because Defendant does not seek

suppression of any statements made after he was detained to this extent, the Court will deny his Motion.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Suppress. An appropriate Order shall issue.

February 8, 2006                        _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE